UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **RUSSELL E. GREEN** | * | **CIVIL ACTION NO. 10-1408** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Russell E. Green filed the instant application for Title II Disability Insurance Benefits on September 27, 2007. (Tr. 143-145). He alleged disability as of March 15, 2004, because of neck problems. (Tr. 153, 157). The claim was denied at the initial stage of the administrative process. (Tr. 62-67). Thereafter, Green requested and received an October 1, 2008, hearing before an Administrative Law Judge ("ALJ"). (Tr. 46-61 ). The ALJ also held a supplemental hearing on July 2, 2009. (Tr. 34-45). In an August 26, 2009, partially favorable decision, the ALJ awarded disability benefits for a closed period from July 1, 2004, until November 11, 2005. (Tr. 12-32). However, he denied disability for the period after November 11, 2005, finding at Step Five of the sequential evaluation process that Green was able to make an adjustment to other work that

exists in substantial numbers in the national economy. *Id*. Nonetheless, on October 19, 2009, the ALJ issued an amended decision which effectively withdrew the favorable portion of his prior decision on the grounds that because Green did not file his application for benefits within 12 months of the end of his closed period of disability, he was not entitled to a Period of Disability or Disability Insurance Benefits under the regulations. (Tr. 4-10). Green appealed the adverse decision to the Appeals Council. On July 15, 2010, however, the Appeals Council denied Green's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On September 10, 2010, Green sought review before this court. He alleges the following errors:

(1) the ALJ erred by failing to properly apply the "medical improvement" standard before concluding that there had been improvement in Green's condition;

(2) the ALJ's residual functional capacity assessment for the period starting November 11, 2005, is not supported by substantial evidence; and

(3) the ALJ's Step Five determination is not supported by substantial evidence because he failed to employ a vocational expert to assess the effect of plaintiff's non-exertional limitation(s).

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

  (1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

  (2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

  (3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

  (4)  If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

  (5)  If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

  The Disability Benefits Reform Act of 1984 amended the Social Security Act to provide a standard of review for determining whether a disability has ceased. Pub.L. 98-460.  The Commissioner has prescribed regulations to implement the standard of review.  In determining whether Disability or SSI benefits may be terminated, the ALJ must consider whether substantial evidence demonstrates:

    1.  that there has been any medical improvement in the

>   individual's impairment or combination of impairments that
>   is related to the claimant's ability to work; and
>
> 2.  that the individual is currently able to engage in substantial gainful
>     activity.

20 C.F.R. § 404.1594(a).

In evaluating the above-enumerated issues, the Commissioner uses an eight-step sequential analysis:

>   1.  If a claimant is engaged in substantial gainful activity, disability will be found to have ended regardless of the medical findings.
>
>   2.  If the claimant's impairment meets the severity of an impairment listed in Appendix 1, his disability will be found to continue.
>
>   3.  If the impairment does not meet the Appendix 1 listings, whether there has been medical improvement as shown by a decrease in medical severity must be determined. If so, Step 4 is considered. If there has been no decrease in medical severity, there has been no medical improvement, and Step 5 is considered next.
>
>   4.  If medical improvement is found, whether the improvement is related to the claimant's ability to perform work must be considered. To make this determination, whether or not there has been an increase in the residual functional capacity based on the impairment that was present at the time of the most recent favorable medical determination must be considered.
>
>   5.  If it is found at Step 3 that there has been no medical improvement or at Step 4 that the medical improvement was not related to the claimant's ability to work, a determination as to whether the exceptions apply. If none apply, disability will be found to continue. If one of the first group of exceptions to medical improvement applies, Step 6 is considered. If an exception in the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended.
>
>   6.  If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, then it must be determined whether all of the claimant's current impairments in combination are severe. If the evidence shows that the current impairments in combination do not significantly limit the claimant's physical or mental abilities to do basic work activities, the impairments will not be considered severe and the claimant will no longer be considered disabled.

      7.      If the impairment is severe, then the claimant's residual functional capacity based on all his current impairments must be considered to determine if the claimant can perform his past work. If a claimant can still perform his past work, disability will be found to have ended.

      8.      If a claimant's impairment prevents him from performing his past work, other factors including his age, education, past work experience, and residual functional capacity are considered to determine if other work can be performed. If other work can be performed, then disability will have ended.

20 C.F.R. § 404.1594(f)(paraphrased).

The review may cease and benefits may be continued at any point in the analysis if the Secretary determines that there is sufficient evidence to find that the claimant is still unable to engage in substantial gainful activity. *Id*.

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Green did not engage in substantial gainful activity during the relevant period. (Tr. 19-20). At Step Two, he found that he suffers severe impairments of degenerative disc disease of the cervical spine, status post-surgery; hypertension; bipolar disorder; and anxiety disorder. *Id*. The ALJ concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 20).

### II. Residual Functional Capacity

The ALJ next determined that, from July 1, 2004, through November 10, 2005, Green

retained the residual functional capacity for sedentary work,[1] reduced by the need for two hours of recumbent rest during an eight-hour workday, with the ability to understand, remember, and carry out no more than simple job instructions. (Tr. 20-21). As of November 11, 2005, however, the ALJ determined that Green retained the residual functional capacity for light work,[2] except for the inability to understand, remember, and carry out more than simple job instructions. (Tr. 29).

Plaintiff initially argues that the ALJ failed to apply the medical improvement standard, but that to the extent that he did, there was "absolutely no medical evidence" to support a finding that the severity of plaintiff's medical impairments improved as of November 11, 2005. (Pl. Brief, pg. 13). In response, the Commissioner argues that the medical improvement standard is

---

[1] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[2] Light work contemplates:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

inapplicable, and that the ALJ need only show that plaintiff was not disabled more than 12 months before he filed his application for benefits on September 27, 2007. The court finds that both sides miss the mark.

In his original decision, the ALJ determined that plaintiff was disabled from July 1, 2004, the date that he ceased working, through November 10, 2005. (Tr. 28). He concluded, however, that as of November 11, 2005, Green experienced medical improvement that was related to his ability to work. (Tr. 29-30). In his amended decision, the ALJ maintained his previous finding that plaintiff was disabled for a closed period from July 1, 2004, through November 10, 2005, and that he experienced medical improvement on November 10, 2005. (Tr. 8-10).[3] The only thing that he changed was to recognize that plaintiff was not entitled to the payment of benefits for the closed period of disability because he did not timely file his application. *Id*.[4] In *Waters v. Barnhart*, the Fifth Circuit clarified that the eight step "medical improvement standard applies to the cessation date in closed period cases." *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002). The practical effect and difference between the five step standard and the medical improvement standard is that in the latter situation, "the government must, in all relevant respects, prove that the person is no longer disabled." *Id*. (citations omitted).

Nevertheless, and despite plaintiff's argument to the contrary, it is manifest that the ALJ determined that plaintiff experienced medical improvement that was related to his ability to

---

[3] The ALJ specifically stated that "[t]here are no changes with regard to the rationale applied for reaching a conclusion that medical improvement occurred on November 10, 2005." (Tr. 8).

[4] Of course, even if plaintiff had timely filed for benefits, the award for the period of disability that extended through November 10, 2005, likely would have been offset by the amount of workers' compensation benefits that plaintiff received during this period. *See* Tr. 32.

work. The ALJ supported his finding with Dr. McHugh's November 10, 2005, office note, wherein McHugh concurred with a functional capacity evaluation ("FCE") that found plaintiff capable of light work, both above and below the waist. (Tr. 287). Plaintiff protests that McHugh's conclusion that plaintiff could work at the "light physical demand level," does not support a finding that plaintiff could perform light work, as contemplated under the regulations. Indeed,

> [a]djudicators must not assume that a medical source using terms such as "sedentary" and "light" is aware of [the Commissioner's] definitions of these terms. The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.

SSR 96-5p.

Here, however, McHugh's impression stemmed from an FCE, which, in the court's experience, is an exhaustive examination that fully addresses all aspects of the patient's work capacity. Unfortunately, the FCE does not appear in the instant record, albeit the ALJ seemed to infer a nefarious motive behind this omission. *See* Tr. 25 ("the [FCE] has been withheld from the [ALJ]"). Regardless, McHugh clearly believed that Green was capable of meeting the demands of some form of light work because he specifically encouraged Green to obtain vocational training. (Tr. 287). Furthermore, on October 27, 2005, Green told his treating physician, David Hebert, M.D., that he was going to re-train in the air-conditioning field because that job would be easier on his neck. (Tr. 211). In other words, plaintiff himself seemed to think that he could meet the regular time and attendance hours of a steady job.

The difficulty with the ALJ's determination, however, is that around this same November-December 2005 time frame that Green was reaching maximum medical improvement

from his prior cervical surgery, Green began to experience renewed cervical pain, which was corroborated by an MRI scan that demonstrated progression of the spondylosis at the C3/C4 level, with impingement. (Tr. 285). McHugh's December 15, 2005, office notes reflect that he discussed with Green the possibility of further cervical surgery. (Tr. 285). Green told McHugh that he understood, and that he would follow-up in 12 weeks. *Id.* However, he never did.[5]

Instead, Dr. Hebert's January 23, 2006, office notes indicate that Dr. McHugh did not plan any further surgery. (Tr. 208). Then, on February 16, 2006, Green told Dr. Hebert that Dr. McHugh had advised him to apply for disability. (Tr. 207). However, there is nothing in Dr. McHugh's office notes to corroborate this representation by plaintiff. On the other hand, if McHugh *did* advise plaintiff to apply for disability, then, clearly, plaintiff's medical improvement in November 2005, was short-lived.

Even if McHugh's November 10, 2005, office note supports medical improvement for a brief period, it does not support plaintiff's residual functional capacity for the ensuing four years, i.e. until the date of the ALJ's decision. McHugh did not see plaintiff during this period, and his last note indicated that plaintiff likely needed surgery. Instead, David Hebert, M.D., and Carter Cox, M.D., maintained plaintiff on varying levels of pain medication throughout most of this time.[6] However, there is no medical source statement in the record from these treating physicians. Moreover, although the consultative examiner, Bruce Torrance, M.D., found but

---

[5] The ALJ noted that plaintiff never returned to Dr. McHugh for further treatment. Plaintiff consistently explained, however, that he did not follow-up with McHugh because he was unable to afford it. *See e.g.*, Tr. 56, 199, 319-323.

[6] Plaintiff admitted to David Williams, Ph.D., that he became addicted to the medication and abused it. (Tr. 324).

mild limitations of functioning upon examination, he did not express an opinion as to plaintiff's exertional capacity. See Tr. 319-323. In fact, in two letters to the ALJ, plaintiff's counsel pointed out that neither Dr. Torrance nor any other physician had provided a medical source statement regarding plaintiff's functional capacity. See Tr. 186-191. When plaintiff eventually exercised his right to cross-examine Dr. Torrance at a subsequent hearing, Torrance acknowledged that Green could benefit from an evaluation by a neurosurgeon. (Tr. 40). Torrance further stated that he would have to defer to a neurosurgeon or orthopedic surgeon to assess whether plates and screws in Green's neck could be a factor in causing neck pain or pain syndrome. (Tr. 42-43). At the hearing, the ALJ again did not elicit an opinion from Dr. Torrance regarding the functional limitations of plaintiff's impairments. Of course, even if he had, Dr. Torrance, by his own estimation as an internist, was not qualified to render an opinion regarding the effects of plaintiff's cervical impairments and related pain syndrome.

     In sum, because of the apparent deterioration in plaintiff's cervical condition around the same time that McHugh cleared plaintiff for light work, the court is not persuaded that McHugh's November 10, 2005, office note provides substantial evidence for plaintiff's residual functional capacity for the next four years. Furthermore, the consultative physician, Dr. Torrance, did not complete a medical source statement, nor was he qualified to issue an opinion regarding the effects of plaintiff's cervical surgery and ongoing complaints of cervical pain. No treating or agency physician rendered opinions regarding the effects of plaintiff's impairments and his prolonged maintenance on pain medication. In the absence of any valid medical assessment or other corroborating evidence to support the ALJ's physical residual functional capacity assessment, the court is compelled to find that the ALJ's determination is not supported

by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

**III.    Step Five and Remand**

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled also is not supported by substantial evidence.[7]

Plaintiff urges the court to enter a judgment awarding benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with

---

[7] Accordingly, the court need not reach plaintiff's remaining assignment(s) of error. The alleged failure to procure vocational expert testimony may be redressed upon remand.

direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits). The instant record is not so disposed. Plaintiff's residual functional capacity assessment remains indeterminate.

Upon remand, the ALJ should endeavor to obtain medical source statements from all of plaintiff's treating physicians, including clarification from Dr. McHugh as to whether he actually cleared plaintiff for light work for a short period in 2005. Depending upon the level of cooperation by plaintiff's treating physicians, it also may be necessary for plaintiff to be examined by consultative specialist(s), who can review plaintiff's records and issue a medical source statement for the period at issue.

## Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 12th day of December 2011.

*[signature]*
KAREN L. HAYES
U. S. MAGISTRATE JUDGE